FERRIS ELEVATOR COMPANY, INC., *et al.*, Plaintiffs, v. NEFFCO, INC., *et al.*, Defendants (Estel· Neff, Counterclaimant and Plaintiff-Appellant; LeHarpe Feed and Grain Company *et al.*, Counterclaimants · and Defendants-Appellees.

Third District    No. 3—96—0066

Opinion filed December 11, 1996.

Thomas W. O'Neal (argued), of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellant.

Albert V. Ancelet (argued), of Capps, Ancelet & Stoverink, of Carthage, for appellees.

PRESIDING JUSTICE BRESLIN delivered the opinion of the court:

Appellant Estel Neff filed a counterclaim asserting a shareholder's derivative action on behalf of LeHarpe Feed & Grain Company (LFG) against two of its directors, appellees Lawrence Harrell and Eldon Harrell. He also filed a claim against LFG on a promissory note. The jury found in favor of the Harrells on the shareholder derivative claim and for Neff on the promissory note claim. Neff appeals both verdicts, alleging that the trial court improperly employed the business judgment rule and that the jury erroneously calculated the damages related to the note. For the reasons that follow, we hold that the court's employment of the business judgment rule was not reversible error. Additionally, we hold that the jury miscalculated the damages with respect to the note. Thus, we affirm in part, reverse in part and remand.

Estel Neff, Lawrence Harrell and Eldon Harrell were the shareholders and directors of LFG. LFG was a licensed grain dealer and grain warehouse under the Illinois Grain Dealers Act (225 ILCS 630/1 et seq. (West 1994)) and the Public Grain Warehouse and Warehouse Receipts Act (240 ILCS 15/1 et seq. (West 1994)) (collectively, the Acts). The Illinois Department of Agriculture (IDOA) is responsible for conducting annual field examinations of grain dealers and warehouse licensees to confirm that they are complying with the Acts.

In 1985, the IDOA alleged three violations of the Acts, but LFG was able to take action to avoid having its license revoked. However, in 1986, the IDOA again alleged several deficiencies and also alleged that the Harrells, who farmed 1,500 acres, purchased corn from LFG and obtained a nonrecourse price support loan from the federal government in violation of federal law. Thereafter the Harrells concluded that LFG's licenses should be surrendered. Lawrence Harrell testified that this decision followed an investigation into each of the allegations.

Neff, however, alleged that the Harrells did not sufficiently investigate the IDOA allegations or take sufficient actions to defend against the IDOA. Neff presented evidence that 22 of the 23 IDOA allegations were curable deficiencies. He alleged that the failure to properly inquire into the possibility of remedying the alleged violations was a breach of the duty of care owed to the corporation. Neff alleged that the remaining deficiency, the acquisition of the nonre-

course price support loan, was solely attributable to the Harrells, not the corporation. He also alleged that the failure to defend the corporation following this activity amounted to a breach of the directors' duty of care.

The promissory note at issue in this case was made out to Neff in 1979 in the amount of $40,000. Neff testified that LFG owed $87,095.07 at the beginning of the trial based on the outstanding principal balance of $33,750 plus the interest that had accrued. On behalf of LFG, the Harrells suggested that, based on corporate financial statements, Neff voluntarily reduced the principal balance to $27,750 and then to $16,150 in November of 1985. Additionally, the Harrells attempted to elicit testimony at trial concerning amounts owed by Neff to the corporation, but they failed to plead an affirmative defense of setoff. The court did not allow the testimony concerning Neff's alleged debt because of this failure to plead a setoff. During deliberations, the jury made inquiries to the judge concerning Neff's debt to the corporation. The judge responded that the jury could return a verdict in any amount supported by the evidence.

Additionally, after denying the Harrells' motion for directed verdict and despite Neff's arguments that the business judgment rule did not apply, the court instructed the jury that directors are presumed to have acted with due care when making decisions on behalf of the corporation. The instruction stated:

"In your deliberations on Counts I and II of the counterclaim you should consider the following:

Directors and officers of a corporation must be diligent and careful in performing the duties they have undertaken, and must make independent and informed business decisions. Actions of directors and officers made on an informed basis, in good faith, without corrupt motive, and in the honest belief that the actions are in the best interests of the corporation, are presumed valid. Actions of directors and officers that constitute self-dealing, fraud, or bad faith are presumed invalid, and the directors and officers have the burden of proving that the actions were fair and reasonable."

The jury rendered a verdict against Neff on the shareholder's derivative claim and for Neff in the amount of $23,926.94 on the promissory note. Thereafter, Neff made a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The motion was denied. Neff appeals.

The first issue is whether the business judgment rule is available to corporate directors accused of violating the duty of care to the corporation.

■ The business judgment rule is a presumption that directors of a corporation make business decisions on an informed basis, in good faith, and with the honest belief that the course taken was in the best interests of the corporation. *Powell v. Western Illinois Electric Cooperative*, 180 Ill. App. 3d 581, 536 N.E.2d 231 (1989); *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984). Like most rebuttable presumptions, it arises by operation of law. See *Diederich v. Walters*, 65 Ill. 2d 95, 357 N.E.2d 1128 (1976) (rebuttable presumptions are not evidence but arise as a rule of law). However, the plaintiff may rebut the presumption by presenting evidence that the director acted fraudulently, illegally, or without becoming sufficiently informed to make an independent business decision. See *Smith v. Van Gorkom*, 488 A.2d 858 (Del. 1985); see also *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452, 448 N.E.2d 872 (1983) (presumptions remain until sufficient evidence is introduced contrary to the presumption).

Neff argues that this controversy is not governed by the business judgment rule because the issue does not concern the reasonableness of the decision to surrender the licenses itself but, rather, the adequacy of the process by which the decision was made.

However, the business judgment rule is a presumption that applies to all directors who allegedly fail to inform themselves before making corporate decisions. See *Van Gorkom*, 488 A.2d at 872; *Aronson*, 473 A.2d at 812. Therefore, we hold that until evidence is put forth that suggests that the directors failed to act on an informed basis, they enjoy the presumption of the rule.

The next issue is whether the business judgment rule is an affirmative or special defense that must be pled by corporate director defendants.

■ The test for whether a defense is an affirmative defense that must be pled is whether the defense gives color to the opposing party's claim and then asserts new matter by which the apparent right is defeated. *Condon v. American Telephone & Telegraph Co.*, 210 Ill. App. 3d 701, 569 N.E.2d 518 (1991).

■ Neff's complaint alleges that the directors breached a duty of care to the corporation. However, the business judgment rule is nothing more than a presumption that the director has not breached this duty. Although the rule has the effect of being a complete defense in certain cases, it is not an affirmative defense because it neither gives color to Neff's claim, nor raises any new matter to defeat the claim.

Neff argues in the alternative that the business judgment rule is a special defense that must be pled pursuant to section 2—613(d) of the Code of Civil Procedure (735 ILCS 5/2—613(d) (West 1994)). We disagree.

Section 2—613(d) requires the pleading of other defenses, "whether affirmative or not, which, if not expressly stated in the pleading, would be likely to take the opposite party by surprise." 735 ILCS 5/2—613(d) (West 1994). The business judgment rule is not such a defense. To the contrary, the rule is a presumption that arises by operation of law. See *Diederich v. Walters*, 65 Ill. 2d 95, 357 N.E.2d 1128 (1976). It arises in favor of all directors and presumes that their business decisions were properly made in the best interests of the corporation. Therefore, we reject this argument and hold that the business judgment rule is neither an affirmative nor a special defense that need be pled pursuant to section 2—613 of the Code of Civil Procedure.

■ The next issue is whether it was proper to instruct the jury on the presumption of the validity of the directors' decision once Neff's claim survived a motion for directed verdict. Put another way, the issue is whether the court should have mentioned the presumption to the jury although it determined that there was enough evidence of improper director activity to allow the case to be decided by the jury.

As stated above, the business judgment rule is a presumption that corporate decisions made by directors are made on an informed basis and with the honest belief that the course taken is in the best interests of the corporation. *Powell v. Western Illinois Electric Cooperative*, 180 Ill. App. 3d 581, 536 N.E.2d 231 (1989). The burden is on the party challenging the decision to present facts rebutting the presumption. See *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452, 448 N.E.2d 872 (1983). Illinois follows the bursting bubble theory, which provides that once evidence is established that contradicts the presumption, the presumption vanishes. *Dean*, 95 Ill. 2d at 461, 448 N.E.2d at 876, citing *Diederich v. Walters*, 65 Ill. 2d 95, 357 N.E.2d 1128 (1976). Thereafter, because the presumption has ceased to operate, it is error to instruct the jury with regard to the presumption. See *Diederich*, 65 Ill. 2d at 101, 357 N.E.2d at 1131, citing 1 S. Gard, Jones on Evidence § 3:9, at 146 (6th ed. 1972); see also J. Strong, McCormick on Evidence § 344, at 460 (4th ed. 1992).

Neff argues that since he offered enough evidence of lack of care in investigating to overcome the Harrells' motion for directed verdict, it was error to instruct the jury as to the presumption. He asserts that when the motion for directed verdict was denied, the bubble burst and the presumption was extinguished.

The evidence tendered by Neff suggested that the decision made by the directors was not an informed one. Based on its denial of the motion for directed verdict, the court obviously found that Neff presented enough evidence for a jury to find that the Harrells breached

their duty of care to the corporation. The court's finding burst the bubble and extinguished the presumption. Therefore, it was error to instruct the jury as to the presumption. However, we must determine whether the instruction was reversible error.

A judgment will not be reversed where the jury instructions were erroneous unless the instruction misled the jury and the party suffered prejudice. *Dabros v. Wang*, 243 Ill. App. 3d 259, 611 N.E.2d 1113 (1993).

The instruction in question stated that "[a]ctions of directors and officers made on an informed basis *** are presumed valid." While the jury instruction should not have mentioned the presumption in this case, we do not think that it misled the jury or prejudiced Neff. The instruction informed the jury that if it found that the decisions of the directors were made on an informed basis, the actions are presumed valid. Whether the decision made by the directors was an informed one was the question to be decided by the jury. The instruction appropriately left it to the jury to make this determination. It did not heighten Neff's burden, and we fail to see how it could have misled the jury. Therefore, we hold that, while it was error to instruct the jury as to the presumption, it was not reversible error.

■ The final issue is whether the court abused its discretion when it denied Neff's motion for a new trial on the issue of damages.

Great deference is given to the decisions of the trial court in granting or denying motions for new trials. *Reidelberger v. Highland Body Shop, Inc.*, 83 Ill. 2d 545, 416 N.E.2d 268 (1981). Where the evidence of liability is clear and the jury's verdict bears no reasonable relation to plaintiff's loss, the court should order a new trial on the issue of damages only. *Duncan v. Peoria Yellow Checker Cab Corp.*, 45 Ill. App. 3d 653, 359 N.E.2d 1242 (1977). However, *additur* may be employed to correct the omission of an easily calculated damage amount. *Fraher v. Inocencio*, 121 Ill. App. 3d 12, 459 N.E.2d 11 (1984).

The jury was instructed that it should find in Neff's favor if the principal balance was $33,750, and if not, it was to find in the corporation's favor. Neff argues that the jury inappropriately granted a setoff to the corporation when it entered a verdict in favor of Neff for $23,926.94. We agree.

During deliberations the jury sent a message to the court that noted that the value of the promissory note appeared to be $16,150, but asked the court whether Neff still owed $16,077 to the corporation. The jury's consideration of Neff's alleged debt was improper because the testimony that there were debts owed to the corporation by Neff was not allowed due to LFG's failure to plead a setoff as an affirmative defense. However, it is abundantly clear that Neff's al-

leged debt was taken into consideration when the jury calculated its verdict. Based on the evidence, the jury only had a choice of awarding Neff $33,750, $27,750, or $16,150 plus interest. However, the jury's award of $23,926.94 is substantially lower than the lowest possible value the note had when taking into account the 14% interest accruing since 1979. Therefore, we hold that the verdict was not supported by the evidence. However, because we are unable to determine from the record the proper amount due, we remand this case to the circuit court for a new trial on the issue of damages.

For the foregoing reasons, the judgment of the circuit court of Hancock County is affirmed in part, reversed in part and remanded.

Affirmed in part, reversed in part and remanded.

LYTTON and McCUSKEY, JJ., concur.