# Third District Court of Appeal
## State of Florida

Opinion filed February 23, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1471
Lower Tribunal No. 16-27442
_____

**New Horizons Condominium Master Association, Inc.,**
Appellant,

vs.

**Robert Harding, et al.,**
Appellees.

An appeal from the Circuit Court for Miami-Dade County, Abby Cynamon, Judge.

Scott J. Edwards, P.A., and Scott J. Edwards (Boca Raton), for appellant.

Mark Perlman, P.A., and Mark Perlman (Hollywood), for appellees.

Before SCALES, MILLER, and BOKOR, JJ.

MILLER, J.

In this garden-variety condominium dispute over assessments, appellant, New Horizons Condominium Master Association, Inc., challenges a final summary judgment granting declaratory relief and awarding monetary damages in favor of appellees, Robert Harding and Fifth Horizons Condominium, Inc. By way of the final judgment, the trial court compelled the disclosure of several years of audits and invalidated a budgetary allocation for cable services as ultra vires. On appeal, the Master Association contends that factual issues precluded summary judgment, and, regardless, the trial court erred in failing to consider whether the actions of its directors were protected from review as the product of a valid exercise of business judgment. We affirm in part and reverse in part.

## BACKGROUND

The Master Association governs a condominium development in North Miami, Florida. It is comprised of seven member subdivisions, one of which is Fifth Horizons. Each subdivision has a separate community association. The Master Association provides common services to the sub-associations, including asphalt and parking lot maintenance, clubhouse and pool area amenities, common area lighting, landscaping, irrigation, and, as pertinent to this case, bulk cable and telecommunications services. These services are funded by assessments collected from the sub-associations.

2

The sub-associations have the authority to designate residents to serve as directors on the Master Association's Board (the "Board"). During the time period relevant to these proceedings, Harding was designated by Fifth Horizons to serve on the Board.

In late 2009, the Master Association entered into a contract with Comcast for the provision of cable services. Pursuant to the contractual terms, Comcast was obligated to provide cable services to all seven sub-associations. Each sub-association was charged with proportionally satisfying the cable costs, as assessed by the Master Association.

Several years into the contract, a dispute arose regarding payment, and Comcast demanded over $300,000.00 in arrearages from the Master Association. In early 2016, the Board convened to discuss a potential settlement. During the meeting, the Board drafted a budget which included a line-item expense for Comcast services in the amount of $248,000.00. After two subsequent meetings were prematurely terminated, purportedly due to Harding's conduct and a correlating inability to obtain a quorum, approval of the budget was delayed.

In the summer of 2016, the Board met and approved a settlement with Comcast in the amount of $100,000.00. Despite this approval, the Board

ratified the previously drafted budget allocating $248,000.00 for Comcast costs.[1]

Harding and Fifth Horizons then brought suit in the circuit court. In the operative complaint, they sought declaratory relief, alleging the budget, as developed, was ultra vires because it included assessments beyond that required to defray reasonable expenses.[2] Fifth Horizons further asserted it overpaid assessments for 2016 by $3,791.62. The Master Association counterclaimed, asserting claims of breach of contract and unjust enrichment and alleging Fifth Horizons engaged in a pattern of underpayment and withholding of assessments.

Harding and Fifth Horizons moved for final summary judgment. The Master Association countered with verified opposition and further raised the legal argument that the actions of its directors warranted business-judgment deference. Relying upon the evidentiary record, along with the failure by the Master Association to plead business-judgment deference as an affirmative defense, the trial court granted final summary judgment in favor of Fifth

---

[1] The settlement documents were executed several months later and retroactively terminated the contract.

[2] The complaint also sought injunctive relief, the disposition of which is not subject to this appeal.

Horizons and Harding on both the claims and counterclaims.[3] The instant appeal followed.

## STANDARD OF REVIEW

We review both the grant of summary judgment and the application of the business judgment rule de novo. See <u>Volusia County v. Aberdeen at Ormond Beach, L.P.</u>, 760 So. 2d 126, 130 (Fla. 2000).

## ANALYSIS

We affirm the compelled disclosure of audits without further discussion and turn our examination to whether the failure by the Master Association to plead the business judgment rule as an affirmative defense precluded its application. "[B]orn of the recognition that directors are, in most cases, more qualified to make business decisions than are judges," <u>Royal Harbour Yacht Club Marina Condo. Ass'n, Inc. v. Maresma</u>, 304 So. 3d 1268, 1269 (Fla. 3d DCA 2020) (quoting <u>Int'l Ins. Co. v. Johns</u>, 874 F.2d 1447, 1458 n.20 (11th Cir. 1989)), "[t]he business judgment rule has been part of English and American common law for more than 200 years." Gerard V. Mantes & Emily S. Fields, <u>The Business Judgment Rule</u>, 99 Mich. B.J. 30, 30 (Jan. 2020). While "[t]he precise verbal formulation of [the] rule varies from jurisdiction to

---

[3] The lower court excised all purported overages from the projected 2016 budget, which had the effect of reducing Fifth Horizons' annual assessment by $3,791.62.

jurisdiction, and there are some substantive differences among the various versions of the rule . . . the essence of the rule is clear." Mark A. Sargent & Dennis R. Honabach, D&O Liability Handbook § I:3 (Sept. 2020) (footnote omitted). The rule protects officers and directors from judicial review of their acts, provided that "business judgments are made in good faith based on reasonable business knowledge." Action Against Directors and Officers— Business Judgment § 12:7.50 (2021).

In Florida, the business judgment rule has been codified by statute for corporations, limited liability companies, and not-for-profit corporations. See § 607.0831(1), Fla. Stat. (2021) ("A director is not personally liable for monetary damages to the corporation or any other person for any statement, vote, decision to take or not to take action, or any failure to take any action, as a director . . . ."); § 605.04093(1), Fla. Stat. ("A manager in a manager-managed limited liability company or a member in a member-managed limited liability company is not personally liable for monetary damages to the limited liability company, its members, or any other person for any statement, vote, decision, or failure to act regarding management or policy decisions . . . ."); § 617.0834(1), Fla. Stat. (extending business-judgment deference to nonprofit officers and directors). As drafted, these statutes protect directors

6

from liability under most circumstances, absent a showing of bad faith, self-dealing, or a violation of criminal law.

In conformity with these statutory and common law tenets, Florida courts have extended business-judgment deference to common interest associations, uniformly shielding "a condominium association's decision if that decision is within the scope of the association's authority and is reasonable—that is, not arbitrary, capricious, or in bad faith" from judicial review. Hollywood Towers Condo. Ass'n, Inc. v. Hampton, 40 So. 3d 784, 787 (Fla. 4th DCA 2010).

There are no reported Florida decisions holding that a party seeking to invoke business-judgment deference must raise the rule as an affirmative defense. Indeed, both the statutory language and a survey of persuasive authority from other jurisdictions suggest the contrary.

The statutes affording business-judgment protection render directors immune unless there is a showing of bad faith, self-dealing, or criminal conduct. Although the Florida Legislature could have defined the business judgment rule as an affirmative defense that the defendant must raise, it did not do so. See State v. Ellis, 723 So. 2d 187, 190 (Fla. 1998). Instead, it enacted a presumptive framework consistent with that adopted in other jurisdictions.

In this regard, whether formally codified or not, the business judgment rule is generally viewed as a historically accepted principle of managerial prerogative.  See Bruce T. Rosenbaum, The Presumptions and Burdens of the Duty of Loyalty Regarding Target Company Defensive Tactics, 48 Ohio St. L.J. 273, 274 (1987); see also Data Key Partners v. Permira Advisers LLC, 849 N.W.2d 693, 701 (Wis. 2014) (second alteration in original) (quoting Reget v. Paige, 626 N.W.2d 302, 310 (Wis. Ct. App. 2001)) ("[T]he business judgment rule 'immunize[s] individual directors from liability and protects the board's actions from undue scrutiny by the courts.'").  Consistent with this view, the rule does not need to be raised in defensive pleadings to shield corporate conduct from judicial review.  Instead, it applies presumptively by operation of law.  See In re Great Lakes Comnet, Inc., 586 B.R. 718, 725 (Bankr. W.D. Mich. 2018) ("The business judgment rule is not an affirmative defense.  Rather, it is a substantive and procedural presumption . . . ."); Kaye v. Lone Star Fund V (U.S.), L.P., 453 B.R. 645, 679 (N.D. Tex. 2011) ("[D]escribing the presumption created by the business judgment rule as an affirmative defense is, at best, a dubious characterization of the rule."); Marsalis v. Wilson, 778 N.E.2d 612, 616 (Ohio Ct. App. 2002) ("Civ.R. 8(B) [General rules of pleading] suggests that the defendants might be obligated to plead the business judgment rule as a

8

defense, though that is probably not required, since a presumption in defendants' favor exists by operation of law, whether or not it is pleaded."). Several cases even stand for the proposition that a party seeking to challenge a business decision must first establish facts rebutting the presumption of reasonableness. See Cuker v. Mikalauskas, 692 A.2d 1042, 1046 (Pa. 1997) (quoting Rosenfield v. Metals Selling Corp., 643 A.2d 1253, 1262 (Conn. 1994)) ("The fact is that liability is rarely imposed upon corporate directors or officers simply for bad judgment and this reluctance to impose liability for unsuccessful business decisions has been doctrinally labeled the business judgment rule. Shareholders challenging the wisdom of a business decision taken by management must overcome the business judgment rule."); Solomon v. Armstrong, 747 A.2d 1098, 1111–12 (Del. Ch. 1999) ("Under the business judgment rule, the burden of pleading and proof is on the party challenging the decision to allege facts to rebut the presumption."); Ferris Elevator Co., Inc. v. Neffco, Inc., 674 N.E.2d 449, 453 (Ill. App. Ct. 1996) ("The burden is on the party challenging the decision to present facts rebutting the presumption."); Oliveira v. Sugarman, 152 A.3d 728, 736 (Md. 2017) (quoting Boland v. Boland, 31 A.3d 529, 549 (Md. 2011)) ("To overcome the 'dangerous terrain' of the business judgment rule presumption, the plaintiff must assert facts that suggest the corporate

9

directors did not act in accordance with the rule."); Gantler v. Stephens, 965 A.2d 695, 706 (Del. 2009) ("Procedurally, the plaintiffs have the burden to plead facts sufficient to rebut that presumption."); Powell v. W. Ill. Elec. Coop., 536 N.E.2d 231, 235 (Ill. App. Ct. 1989) ("[T]he directors' decision is presumed proper, and the burden is properly placed on the shareholder plaintiffs to show that the directors are not now acting in good faith and independently in desiring to prosecute the lawsuit."); see also 13 Summ. Pa. Jur. 2d, Business Relationships § 8:75 (2021) ("Where there is a prima facie showing that the directors or majority shareholders have a self-interest in a particular corporate transaction, or that the board has acted fraudulently or in bad faith, the business judgment rule does not apply and the burden shifts to the directors to demonstrate that the transaction is intrinsically fair."). Against this weight of authority and in the absence of any controlling precedent to the contrary, we decline to engraft a pleading requirement into the law. See Lori McMillan, The Business Judgment Rule as an Immunity Doctrine, 4 Wm. & Mary Bus. L. Rev. 521, 569 (2013) ("As long as the conditions for the application of the business judgment rule are met, the courts will not assess the quality of the decision. This has a direct parallel to immunity.").

Here, the Master Association sought protection in the rule in its opposition to summary judgment, specifically alleging its quorum of directors acted with authority, neutrality, and good faith. Under this circumstance, the Board was not required to raise business-judgment deference as an affirmative defense.

Fifth Horizons alternatively argues, however, that the Board's actions were ultra vires, therefore not subject to business-judgment deference. In support of its position, it contends the amount allocated for cable within the budget exceeded that necessary to defray the costs of the settlement.

We reject this proposition on two grounds. First, because the parties sharply disputed the chronology of the settlement, development of the budget, and necessity for collecting assessments, the competing evidence of record created a factual issue incapable of resolution on summary judgment. Second, irrespective of the factual issues, this position overlooks a critical legal distinction.[4] Ultra vires acts are those performed without legal authority. They are therefore characterized as void on the basis that no power to act existed, even where proper procedural requirements are

---

[4] Two of our sister courts have determined that "the business judgment rule applies to ultra vires claims against the corporation itself." Share v. Broken Sound Club, Inc., 312 So. 3d 962, 971 (Fla. 4th DCA 2021); see also Yarnall Warehouse & Transfer, Inc. v. Three Ivory Bros. Moving Co., 226 So. 2d 887, 892 (Fla. 2d DCA 1969).

followed. See Liberty Couns. v. Fla. Bar Bd. of Governors, 12 So. 3d 183, 191–92 (Fla. 2009). Conversely, acts by a corporation that are within its realm of power, albeit imprudent or violative of a clear directive, are intra vires. See Hollywood Towers, 40 So. 3d at 787.

Here, the governing documents grant the Master Association "all of the powers and privileges granted to corporations not for profit" including "all of the powers incidental and reasonably necessary to implement and effectuate the purposes of the corporation." The bylaws further authorize the Master Association to adopt an annual budget, "contain[ing] the estimates of the cost of performing the functions of the [corporation]," and "[to] make, levy, and collect assessments against each condominium to defray the costs of the [corporation], and to use the proceeds of said assessment in the exercise of the powers and duties granted to the corporation." Because the Master Association was authorized to develop a budget and collect assessments from the sub-associations, inclusion of the challenged assessments in the budget constituted an intra vires act, and business-judgment deference was a salient consideration.

Accordingly, we affirm the compelled disclosure of past audits but reverse those portions of the judgment declaring the actions of the board ultra vires, dispensing with the Master Association's counterclaims, and

awarding damages to Fifth Horizons. Upon remand, the trial court is constrained to "look to the circumstances surrounding the [Master] Association's exercise of [business] judgment as they existed when the action was taken," rather than at the time suit was filed. Miller v. Homeland Prop. Owners Ass'n, Inc., 284 So. 3d 534, 538 (Fla. 4th DCA 2019).

Affirmed in part and reversed in part.